Ethel Pollock, Appellant, *v.* Zoning Board of Adjustment, Appellee, and Frankford Trust Company and Gemmi, Inc., Intervening Appellees.

642

Argued February 3, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*J. Leon Rabben,* for appellant.

*Louis F. Hinman, III,* Assistant City Solicitor, with him *James M. Penny, Jr.,* Assistant City Solicitor, *Raymond Kitty,* Deputy City Solicitor, and *Sheldon L. Albert,* City Solicitor, for appellee.

*Carl K. Zucker,* with him *Vito F. Canuso, Jr.,* and *Cohen, Shapiro, Polisher, Shiekman & Cohen,* for intervening appellee, Gemini, Inc.

*Irvin Stander,* for intervening appellee, Frankford Trust Co.

OPINION BY JUDGE BLATT, August 5, 1975:

Gemini, Inc., (Gemini) owns a small tract of land in northeast Philadelphia for which it has received building and use permits for the construction of a commercial office building. Until September 1965, the tract was zoned R-4 and R-5 Residential under the Philadelphia Zoning Code. All the land contiguous to the tract to the north, south and west in the same block is zoned either R-4 or R-5 Residential as is each of the contiguous blocks to the north, south and west. On the east, the tract fronts on Roosevelt Boulevard (Boulevard), a twelve-lane highway, the other side of which at this point is zoned for industrial and commercial usage.

In September 1965, apparently at the request of Gemini, the developer, the Philadelphia City Council passed Ordinance 1016 which rezoned the tract to O. C. Office Commercial. When, in 1972, the Department of Licenses and Inspection (L&I) amended its zoning maps accordingly and issued building and use permits to Gemini to construct an office building, the appellant, one of the plaintiffs below who own and reside in residences either adjacent to or in the immediate vicinity of the tract in question, filed an appeal from the L&I actions to the Zoning Board of Adjustment (Board). In her appeal, she attacked Ordinance 1016 on statutory and constitutional grounds alleging that it was not enacted in conformance with the Comprehensive Plan for Philadelphia and that it was illegal "spot zoning." After hearings, the Board upheld the validity of the ordinance, dismissed the appellant's appeal, and sustained the action of L&I. The Court of Common Pleas of Philadelphia County, on appeal, refused to restrain construction of the office building, and dismissed the appeal.[1] This appeal followed. The

---

1. The court below had submitted an opinion to this Court explaining its action in denying a restraining order. After all parties had filed briefs with this Court, the lower court submitted a supplemental opinion disposing of the appellant's statutory and

construction of the office building has since been completed.

Under the Philadelphia Home Rule Charter[2] and the Zoning Enabling Act,[3] all zoning legislation must be enacted in accordance with a comprehensive plan and only upon the recommendation of the City Planning Commission. "Generally speaking, spot zoning is the arbitrary and unreasonable classification and zoning of a small parcel of land. This small parcel of land is usually set apart or carved out of a surrounding or a large neighboring tract, with no reasonable justification for the differential zoning." *Cleaver v. Board of Adjustment,* 414 Pa. 367, 379, 200 A. 2d 408, 415 (1964). A municipality, however, may rezone a small piece of property for a use different from that of surrounding uses if such use in is accord with the comprehensive plan and reasonable use in the area. *Trinity Evangelical Lutheran Church v. City Council of Harrisburg,* 2 Pa. Commonwealth Ct. 222, 278 A.2d 372 (1971). It must first be determined, therefore, whether or not the rezoned tract is being treated differently from similar surrounding land then whether or not such differential treatment, if found, is justifiable. *Schubach v. Silver,*    Pa.    , 336 A. 2d 328 (1975).

The court below affirmed the Board without taking additional evidence. We must, therefore, review the findings of fact and conclusions of law of the Board to deter-

---

constitutional claims. This action of the lower court in providing supplemental explanation did not constitute a modification of its order from which the appeal was taken and was not, therefore, improper. *See Corace v. Balint,* 418 Pa. 262, 210 A.2d 882 (1969) wherein modifications of orders are held to be improper once an appeal has been filed.

2. Adopted pursuant to the "First Class City Home Rule Act." Act of April 21, 1949, P.L. 665, *as amended,* 53 P.S. §13101 et seq.

3. Act of May 6, 1929, P.L. 1551, *as amended,* 53 P.S. §14752 et seq.

mine whether the Board abused its discretion or committed an error of law in applying the above principles. *West Whiteland Township v. Sun Oil Company*, 12 Pa. Commonwealth Ct. 159, 316 A.2d 92 (1974) ; *Clawson v. Harbor Creek Zoning Hearing Board*, 9 Pa. Commonwealth Ct. 124, 304 A.2d 184 (1973). Counsel for all parties here have developed a commendable record and have ably argued their case, but the findings of fact by the Board make our review difficult. Nevertheless, these findings, read together with the Board's conclusion of law, enable us to review the issues presented in the case. In short, the Board found that Ordinance 1016 did not constitute spot zoning and that it was enacted in accordance with the Comprehensive Plan.

Our review of the record reveals that the subject tract, which is less than an acre in area, is surrounded by land zoned residential except for that portion to the east and across the Boulevard which is zoned for industrial and commercial uses. Inasmuch as the Boulevard, a 250-foot wide highway, provides a substantial boundary from the industrial and commercial uses on its eastern side, we are inclined to agree with the appellant that the rezoned tract has been singled out for treatment dissimilar to that of its immediate surroundings on the western side of the Boulevard. The rezoned tract could not, therefore, be considered a natural extension of a previously existing commercial use on the other side of the Boulevard. *Upper Darby Township Appeal*, 413 Pa. 583, 198 A.2d 538 (1964).

The rezoning, however, can still be upheld if it is enacted in accordance with the Comprehensive Plan. *French v. Zoning Board of Adjustment*, 408 Pa. 479, 184 A.2d 791 (1962). It is also important to note that the party challenging the constitutionality of an ordinance bears a heavy burden and must "clearly establish [that] the provisions are arbitrary and unreasonable and have no relation to the public health, safety, morals, and gen-

eral welfare and if the validity is debatable, the legislative judgment is allowed to control." *Schubach v. Silver, supra,* Pa. at , 336 A.2d at 335; accord *Trinity Evangelical Lutheran Church, supra.* There is, of course, no formula which can be applied with certainty to determine whether a particular situation constitutes spot zoning. *Mulac Appeal,* 418 Pa. 207, 210 A.2d 275 (1965). The topography, location, and characteristics of the tract may be taken into account. *Cleaver, supra; Clawson, supra.* Each case is decided upon its own peculiarities. Nor is small size the controlling factor. *Trinity Evangelical Lutheran Church, supra.*

As we review the record in this case, we find that although Ordinance 1016 rezoned a very small parcel of land with no apparent topographical features which distinguish it from the surrounding residential lands, the testimony of various witnesses amply supports reasons for treating this property differently. Because it fronts upon the Roosevelt Boulevard, it is distinctly different from most of the surrounding land for two reasons: 1) there is evidence that property fronting on the Boulevard is both undesirable and not in significant demand as a residential use; 2) more importantly, however, is the testimony in the record by officers of the various city agencies that the Comprehensive Plan for the city is to encourage commercial development along the properties fronting on the Boulevard. These commercial uses were evidenced by commercial development to the north and south of the tract for several blocks along the Boulevard. According to John Mitkus, the Deputy Executive Director of the Philadelphia Planning Commission, the Boulevard was of paramount significance in the then emerging pattern of commercial development. Because of the heavy traffic along the Boulevard, property fronting on that highway would not be suitable for residential use and might be more appropriate as commercial use. According to Mr. Mitkus, the rezoning of

the instant tract was but another action in conformity with that pattern of development. We believe, therefore, that the rezoning of this tract was not arbitrary and unreasonable and that it was justifiable in spite of the adverse impact it might have upon the property of the appellant in the immediate vicinity. We also believe that the ordinance consequently did not constitute spot zoning.

The appellant, however, has also raised objections to the manner in which the ordinance was enacted. These objections are founded upon the existence or alleged lack of existence of a comprehensive plan and the fact that only a small portion of the land fronting upon the Boulevard was rezoned as office commercial. The appellant indicates that, at the time of the zoning enactment, the Comprehensive Plan designated the subject tract and surrounding land as residential and that the singling out of this small tract constituted "ad hoc" zoning rather than planned zoning. As was stated in *Eves v. Zoning Board of Adjustment*, 401 Pa. 211, 217, 164 A.2d 7, 11 (1961), "[t]he adoption of a procedure whereby it is decided which areas of land will eventually be zoned F-1 Limited Industrial Districts on a case by case basis patently admits that at the point of enactment of Ordinance 28, there was no orderly plan of particular land use for the community . . . . In other words, the development itself would become the plan, which is manifestly the antithesis of zoning 'in accordance with a comprehensive plan.' " In *Eves, supra,* Ordinance 28 did not delineate the boundaries of the zone but rather outlined a procedure whereby anyone might request that his land be rezoned F-1. In this case, however, we again have the testimony of John Mitkus which indicates that the commercial zoning was to be confined to the properties along the Boulevard. As a comparison of *Eves, supra,* reveals this pattern of development was indeed a plan and was not so haphazard as to permit commercial rezoning with-

out regard to reasonable and relevant boundaries. *Eves, supra,* therefore is not applicable. Moreover, the fact that the tract was not reflected as office commercial on the Comprehensive Plan when the ordinance was proposed, does not by itself negate the notion that the zoning conformed to such a plan.

As our Supreme Court observed in *Cleaver, supra,* 414 Pa. at 375, 200 A.2d at 413:

> "A comprehensive plan does not contemplate or require a 'master-plan' which *rigidly* provides for or attempts to answer in minute detail every possible question regarding land utilization or restriction. Neither a zoning ordinance nor a comprehensive plan is absolutely rigid, static and unchangeable; either or both may be amended, supplemented, changed, modified or repealed—in the sound discretion of the legislative body and in accordance with statutory and other pertinent legal and Constitutional requirements—as conditions or changing circumstances may require. . . ." (Emphasis in original.)

The rezoning here may have been initiated by the developer but the proposed ordinance was first reviewed by the Planning Commission and received a favorable recommendation by that body prior to its enactment. This is a valid procedure by which to ensure that zoning does not take place in a haphazard manner and instead promotes orderly development with changes in the Comprehensive Plan as contemplated by the Planning Commission. *Schubach v. Silver, supra.*

We believe, therefore, that Ordinance 1016 enacted by the City Council of Philadelphia was valid and consequently we affirm the court below and dismiss the instant appeal.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. After again reading several of the many cases on the subject of spot zoning, I

must conclude that what is or is not spot zoning is, like beauty, in the eye of the beholder. Admittedly, the application of the settled law to the facts of each individual case dealing with spot zoning is a difficult task and easily susceptible to differences of opinion. However, my reading of the record in this case convinces me that the rezoning of the small lot fronting on Roosevelt Boulevard, with its trailing tail or outlet stem extending back to Hillspach Street, did constitute spot zoning.

The majority states: "Our review of the record reveals that the subject tract, which is less than an acre in area, is surrounded by land zoned residential except for that portion to the east and across the Boulevard which is zoned for industrial and commercial uses. Inasmuch as the Boulevard, a 250-foot wide highway, provides a substantial boundary from the industrial and commercial uses on its eastern side, we are inclined to agree with the appellant that the rezoned tract has been singled out for treatment dissimilar to that of its immediate surroundings on the western side of the Boulevard. The rezoned tract could not, therefore, be considered a natural extension of a previously existing commercial use on the other side of the Boulevard."

My position simply is that I fully agree with the appellant rather than, like the majority, "inclined to agree with the appellant that the rezoned tract has been singled out for treatment dissimilar to that of its immediate surroundings on the western side of the Boulevard." I would reverse the order of the lower court.